IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD LAWRENCE WARNER, )<br>Plaintiff, )<br>v. )<br>)<br>CATHERINE MCVEY, et al., )<br>Defendants. ) | C.A. No. 08-55 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that Plaintiff's motion for temporary restraining order [Document # 8] be denied.

**II.  REPORT**

**A.  Procedural History**

On February 20, 2008, Plaintiff Richard Lawrence Warner, represented by counsel, filed this civil rights action claiming that Defendants Catherine McVey, Pennsylvania Board of Probation and Parole, Patricia Lightner, James Williams, Audrey Smith, Ann Ludwig, Chris Laythe, and Mike Boyd[1] are violating his constitutional rights by classifying him as a sexual offender. As relief, Plaintiff seeks preliminary and permanent injunctive relief, declaratory relief and monetary relief. Document # 1. More specifically, Plaintiff requests that this Court:

> 1. [issue] an injunction restraining the Defendants from imposing conditions of probation during the time that there has been no conclusion from Iowa about his being deemed a sexual offender as that matter is under appeal.

---

[1] Defendants McVey, Board of Probation & Parole, Lightner, Williams and Boyd (hereinafter, "Department of Corrections Defendants") are employees of the Commonwealth of Pennsylvania and are represented by the Pennsylvania Attorney General's Office. Defendants Smith, Ludwig and Laythe (hereinafter, the "CART Defendants") are employees of the "Community Area Response Team" or CART and are represented jointly by private counsel.

1

> 2. that the regulations and practices of the Defendant Pennsylvania Board of Probation and Parole pertains to its implementation of the Interstate Compact and as applied to this Plaintiff as a sexual offender by its Article One, Section 26 of the Pennsylvania Constitution and by Section One of the Fourteenth Amendment of the United States Constitution. [sic]

Id. at 10 (verbatim).

On April 10, 2008, Plaintiff filed a motion for a temporary restraining order. Document # 8. In support of the motion, Plaintiff argues that "this temporary restraining order is necessary to prevent the Defendants [...] from irreparably doing harm to a man by classifying him as a sexual offender thus embarrassing, disgracing, and exacerbating both his health and his wife's health in compelling participation in a program for sex offenders when the precedential conviction in Iowa was for a non-sex related offense." Document # 9, page 1. Plaintiff has not included a proposed order detailing the specifics of the relief he requests.[2]

A hearing[3] was held on the pending motion on April 21, 2008, at which time Plaintiff acknowledged that the request for temporary restraining order against the CART Defendants had become moot, while the request for injunctive relief continues as to the Department of Corrections Defendants. Plaintiff was permitted to file a post-hearing brief.

### B. Factual History

Around August of 2005, Plaintiff was charged in Davis County, Iowa with one count of sexual abuse in the third degree, a Class C felony, and on September 16, 2005, an additional charge of practicing medicine without a license was levied against Plaintiff. On December 1, 2006, Plaintiff entered a guilty plea to the charge of practicing medicine without a license and, as part of a plea agreement, the charge of sexual abuse was dismissed.

---

[2] However, in his hearing testimony, Plaintiff opines that he "should have the right to travel to do [his] work. And I also want relief from being sent to any sex offender treatment where I'm constantly being asked, under threat of going to jail, to admit to a crime from which I was not prosecuted. That is to say, a sexual crime." Document # 17, pages 60, 61.

[3] Because this Report and Recommendation is limited to a legal analysis, findings of fact are not necessary to the disposition of the pending motion.

On March 9, 2007, Plaintiff was sentenced and on March 13, 2007, Plaintiff requested that his Iowa probation be transferred to his home state of Pennsylvania pursuant to the terms of the Interstate Compact. Document # 1, ¶ 23. A transcript of the March 9, 2007, sentencing hearing indicates that Plaintiff agreed that if his parole were transferred to Pennsylvania, he would comply with all of Pennsylvania requirements which may include submission to evaluation as to the sex offender program. See Document # 15-2, pages 5-7.

Once Plaintiff transferred his parole to Pennsylvania, he was labeled as a sex offender for purposes of supervision only[4] and directed to participate in the Sex Offender Program through CART. Despite his protestations, Plaintiff was not afforded a hearing on this matter and now alleges in this Court that his due process rights have been violated in this regard.

In April of 2007, in the underlying criminal case in Iowa, Plaintiff filed a motion for reconsideration of sentence in the sentencing court seeking relief from Pennsylvania's probationary requirements (specifically relief from the sex offender label). In denying the motion on June 5, 2007, the sentencing court concluded:

> Under the Interstate Compact law, a receiving state supervises an offender in the manner determined by the receiving state and consistent with the supervision it provides similar offenders in that state. The sending state has sole authority to determine the duration of the supervision, either by way of the court's sentence, or by paroling authorities. The receiving state retains discretion as to the type of supervision it will provide. Consequently, there can be qualitative differences between the intensity of services that a sending state would have provided an offender and the services a receiving state will provide the offender under its own rules and laws.
>
> Although a court may, as a condition of probation, impose a special condition and require that that condition be meant [sic] in a receiving state, the receiving state can refuse to provide supervision if the condition cannot be met.
>
> The transfer of an offender's supervision pursuant to an Interstate Compact does not act to deprive the sending state of jurisdiction over the offender. While the receiving state exercises jurisdiction over the offender for purposes of supervision, the sending state retains jurisdiction over the offender for purposes of probation or parole revocation.
>
> The court is sympathetic with Mr. Warner's predicament with the probationary authorities in the State of Pennsylvania. However, the court finds that the

---

[4] Plaintiff has stipulated that Megan's Law does not apply to the case at hand. See Document # 17, pages 6, 63.

3

Judgment Entry filed March 9, 2007 should not be reconsidered, amended or changed as concerns the probationary supervision. Among other things:

- A) appointment of a suitable resident of the state of Iowa to supervise Warner is not practical, and would not be workable or effective;

- B) supervision by Iowa probationary authorities of Mr. Warner, as long as he is a resident of the state of Pennsylvania, would not be practical, and would not be workable or effective;

- C) although this court has declined to impose special terms and conditions of probation in the sentencing order, the state of Pennsylvania is within its rights, under the provisions of the Interstate Compact, to supervise Warner pursuant to its own rules, law and regulations. An Iowa court cannot require otherwise;

- D) the court's Judgment Entry is intended to and will promote Warner's rehabilitation and the protection of the community. The terms of probation imposed by the court are not unreasonable or arbitrary.

Document # 15-2, pages 8-9. Plaintiff has appealed this order and to date, that appeal remains pending. Document # 17, page 77, line 24.

Plaintiff filed the instant action on February 20, 2008 and now seeks injunctive relief.

### C. Standard of review for injunctive relief

A preliminary injunction is "a drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed.Cir.1993). An injunctive remedy "must be reserved for extraordinary circumstances...." Hoxworth v. Blinder, Robinson & Company, Inc., 903 F.2d 186, 189 (3d Cir. 1990). "[I]njunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to plaintiffs.'" Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Company, 290 F.3d 578, 598 (3d Cir. 2001) quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979).

The factors that must be shown for the issuance of a temporary restraining order are the same as those required to issue a preliminary injunction. Fink v. Supreme Court of Pennsylvania, 646 F.Supp. 569, 570 (M.D.Pa. 1986). To obtain a preliminary injunction, the

4

movant must demonstrate **both** (1) that he is reasonably likely to succeed on the merits **and** (2) that he is likely to experience irreparable harm[5] without the injunction. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir.2000). See also Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990). If both of these factors are shown, the effect on the nonmoving parties and the public interest may be considered. Id. at 484. As a court sitting in equity, the district court must weigh the four factors, but it is not incumbent on the movant to prevail on all four factors, only on the overall need for an injunction. Neo Gen Screening, Inc. v. TeleChem Intern., Inc., 69 Fed.Appx. 550, 554 (3d Cir. 2003). A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an injunction, even if a movant's showing on the other two factors is lacking. Id. The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two factors; however, the same is not true of the second two factors. Id. If the record does not support a finding of both irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. Marxe v. Jackson, 833 F.2d 1121 (3d Cir. 1987).

---

[5] Irreparable injury is established by showing that a plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Company v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)("The preliminary injunction must be the only way of protecting the plaintiff from harm"). The plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848 (1989). In fact, a plaintiff must show immediate irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994)(citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa. 1995). An injunction is not issued "simply to eliminate a possibility of a remote future injury...." Acierno, 40 F.3d at 655 (citation omitted).

### D.     Likelihood of success on the merits

Plaintiff's motion for temporary restraining order should be denied based upon the likelihood that the case will be dismissed as without subject matter jurisdiction.[6] Determining whether this Court has subject matter jurisdiction is a threshold issue in this case, and the *Rooker-Feldman* doctrine plays a central role in that analysis. The doctrine is derived from 28 U.S.C. § 1257 and the understanding that "a United States District Court has no authority to review judgments of a state court in judicial proceedings. Review of such judgments may be had only in the [United States Supreme] Court." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983).

The *Rooker-Feldman* doctrine limits this Court's jurisdiction over Plaintiff's claim. The United States Supreme Court has summarized the doctrine:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). See also Lance v. Dennis, 546 U.S. 459 (2006); Rooker v. Fidelity Trust, 263 U.S. 413, 416 (1923) and Feldman, 460 U.S. 462. In other words, application of *Rooker-Feldman* doctrine does not "permit a disappointed state court plaintiff to seek review of a state court decision in the federal court by masquerading his complaint in the form of a federal civil rights action." Logan v. Lillie, 965 F.Supp. 695, 698 (E.D.Pa.1997). "If it were otherwise, any person dissatisfied with a state ... award could seek review in the district court under the guise of a federal civil rights violation." Id.

The Third Circuit Court of Appeals has described the doctrine as: "precluding lower federal court jurisdiction over claims that were actually litigated or "inextricably intertwined" with adjudication by a state's courts . ... Further, we have explained that a federal action is

---

[6] Although other legal bases may also serve as grounds for dismissal of this matter, this Court need only address the threshold inquiry of jurisdiction under the Rooker-Feldman doctrine.

6

inextricably intertwined with a state adjudication, and thus barred in federal court under *Feldman*, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong." Parkview Associates Partnership v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000), cert. denied, 535 U.S. 1055 (2002); see also Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006); ITT Corp. et al v. Intelnet Int'l Corp. et al, 366 F.3d 205 (3d Cir.2004); Newton v. First National Bank, 316 F.Supp.2d 225, 235 n.9 (E.D. Pa. 2004)("the touchstone of *Rooker-Feldman* analysis is whether the federal claims are inextricably intertwined with the state court adjudication.").

In determining whether a claim is "inextricably intertwined" for purposes of jurisdiction, the relevant inquiry is essentially remedy-based:

> [As to the] "inextricably intertwined" analysis, it appears that the relief sought (as opposed to the issues raised ) by the federal plaintiff will be particularly significant in determining whether the Rooker-Feldman doctrine applies. This is because there would be no need to consider whether the issues raised in a federal suit are "inextricably intertwined" with the state-court judgment unless the relief sought includes the review and rejection of the state-court judgment. For example, if the plaintiff seeks relief from the effects of a state-court judgment, such as an expungement of a criminal conviction, the federal action is barred. On the other hand, if the plaintiff seeks relief independent of the state-court judgment, such as a declaration that the statute on which the conviction was based is facially unconstitutional, the action is not barred.

In re Stuart, 367 B.R. 541 (Bkrtcy.E.D.Pa., 2007), quoting 18-133 Moore's Federal Practice Civil § 133.30 (emphasis in original).

In this case, as part of the underlying criminal proceeding in the state court Plaintiff sought (and continues to seek through the appellate process) relief from the sex offender label. In the present case, Plaintiff seeks the identical relief. Because the relief sought is the same, this proceeding is "inextricably intertwined" with the proceedings in the Iowa state courts and will likely be dismissed for lack of subject matter jurisdiction. Therefore, Plaintiff has little likelihood of success on the merits and the present motion for temporary restraining order

7

should be denied.[7]

### III. CONCLUSION

Accordingly, it is respectfully recommended that Plaintiff's motion for temporary restraining order [Document # 8] be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).


S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE


Dated: May 15, 2008

---

[7] In general, federal intervention in ongoing state proceedings is precluded in accordance with the abstention theory articulated in Younger v. Harris, 401 U.S. 37 (1971).