**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD LAWRENCE WARNER, | ) |
| Plaintiff, | ) Civil Action No. 08-55 Erie |
| | ) |
| v. | ) |
| | ) District Judge Sean J. McLaughlin |
| CATHERINE B. McVEY, STATE OF | ) Magistrate Judge Susan Paradise Baxter |
| PA BOARD OF PROBATION AND | ) |
| PAROLE, PATRICIA LIGHTNER, and | ) |
| JAMES WILLIAMS, | ) |
| Defendants. | ) |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [Document # 47] be granted and that Plaintiff's motion for summary judgment [Document # 51] be denied.

Also pending is Plaintiff's motion for judgment on the original pleadings [Document # 55]. Since the original pleadings have been superceded by an Amended Complaint and Answer thereto, it is recommended that that motion be dismissed as moot.

The Clerk of Courts should be directed to close this case.


**II.    REPORT**

**A.    Relevant Procedural History**

On February 20, 2008, Plaintiff Richard Lawrence Warner ("Warner" or "Plaintiff"), through counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983. The original complaint, Document # 1, alleged that Warner's rights were being violated because the Pennsylvania Board of Probation and Parole ("the Board") had directed as a condition of probation that he attend a sex offender evaluation, and that when he refused he was required to attend sex offender treatment. He named as defendants the Board; the Board Chair, Catherine

1

McVey; the Director of the Board's Erie Office, Patricia Lightner; and, the Director of the Board's Western Regional Office, James Williams (collectively, the "State Defendants"). Warner also named as defendants Audrey Smith, Ann Ludwig, and Chris Laythe. At the relevant time they were employees of the Community Area Response Team (collectively, the "CART Defendants").

The State Defendants waived service of the Complaint and, thereafter, filed an Answer to the Complaint, Document # 18. On June 12, 2009, Warner filed a motion for leave to file an amended complaint, Document # 37. Therein, he moved to amend the complaint to include Defendants McVey, Lightner, and Williams as acting in their individual capacities; to voluntarily dismiss the CART Defendants; and, to update the Court on the events that had occurred since the filing of the original complaint. The State Defendants did not oppose Warner's motion. See Document # 40. Warner's motion was granted by text order entered on June 29, 2009, and the Amended Complaint was docketed on September 16, 2009. Document # 43.

Next, the parties filed their cross-motions for summary judgment. [Document # 47, # 51]. Warner then filed a motion for judgment on the pleadings [Document # 55], in which he argued that the State Defendants' Answer to the original complaint was insufficient as a matter of law. On December 15, 2009, the State Defendants filed their Answer to the Amended Complaint, Document # 59, thereby rendering Warner's motion for judgment on the original pleadings [Document # 55] moot. Therefore, it is recommended that that motion be dismissed.

Warner initially sought injunctive and declaratory relief as well as monetary damages. Given that he is no longer under Board supervision and hence not subject to any conditions of probation, his requests for injunctive and declaratory relief are moot. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 248-49 (3d Cir. 2003); Degrange v. West, 196 F.App'x 91, 92 (3d Cir. 2006); Wirshing v. Colorado, 360 F.3d 1191, 1196 (10th Cir. 2004) (citing Green v. Branson, 108 F.3d 1296, 1299 (10th Cir. 1997)).

The parties have completed discovery and the summary judgment issues are fully briefed and the motions are ripe for disposition by this Court.

**B.**     **Relevant Factual History**

**1.**     **Warner's Criminal Proceedings In Iowa**

The following relevant facts of this case are not in dispute.  Warner is a resident of Pennsylvania and he lives in Crawford County.  As part of his job, he traveled among Amish communities in several states and sold water treatment systems, vitamins, and nutritional supplements.  Ex.[1] 56, *Warner Dep.* at 32-41.  In the early Spring of 2005, he traveled to Kentucky, Illinois and Iowa for this purpose.  Id. at 41-57.  He was subsequently criminally charged in Iowa because of an incident occurring on this trip.  Id. at 13.  Specifically, on August 26, 2005, the State of Iowa charged him with "Sexual Abuse in the Third Degree, a Class C felony."  A second count was added to the criminal information on September 16, 2005, charging him with "Practicing Medicine Without A License, a Class D felony."  See, e.g., Ex. 1, *Presentence Investigation Report.*

The charges against Warner were based on statements made by an 18-year-old woman who is a member of an Amish community in Iowa.  She reported that on or around April 1, 2005, Warner, under the guise of performing a medical examination, digitally penetrated her vagina and fondled her breasts.  The investigation further indicated that another victim, a 21-year-old Amish woman from Missouri, reported a similar incident with Warner in February of 2004.  See id.

On December 1, 2006, before the Iowa District Court for Davis County (the "trial court"), Warner pled guilty to Count II, Practicing Medicine Without A License, pursuant to a plea agreement.  In exchange for his plea, the State of Iowa agreed that, among other things, it would dismiss Count I and recommend that Warner receive a five-year suspended sentence with no jail time and probation, which would be transferred subsequently to Warner's home state of Pennsylvania.  The trial court accepted the plea, set sentencing for hearing, and ordered the Eighth Judicial District Department of Correctional Services to complete a presentence investigation.  State v. Warner, 706 N.W.2d 209 (Table), 2008 WL 5009279 at *1 (Iowa App. 2008) (setting forth procedural history of Warner's criminal case).

---

[1]

Unless otherwise noted, all exhibit citations are to those documents attached to Document  # 49.

Warner then filed a motion for judicial review of preparation of presentence investigation. He asserted that, in preparing the presentence investigation, the Department of Correctional Services was improperly including a sexual history report when he had not pled guilty to a sexual crime. Consequently, he requested that the trial court direct that the Department of Correctional Services not prepare a sexual history report as part of its presentence investigation. <u>Id.</u>

On December 15, 2007, a hearing on Warner's motion for judicial review was held before the trial court. At the hearing, the State of Iowa and Warner stipulated that Counts I and II "were out of the same incident that occurred at the same time in the same place." <u>Id.</u> Additionally, Sue Boggs, a probation/parole officer for the Department of Correctional Services, testified regarding the sexual history report she was asked to complete in Warner's presentence investigation. She acknowledged that Warner had pled guilty to a charge that was not associated with any sexual act or sex-related crime, but stated that pursuant to Iowa Code section 901.3 subsections (3), (5), and (7), the investigator was required to inquire into, *inter alia*, the circumstances of the offense and harm to the victim. Consequently, Boggs testified that based upon the minutes of testimony in this case, she was asked to complete a sexual history report. She further noted that the sexual abuse charge was still pending in the case, but that it was scheduled to be dismissed at sentencing. <u>Id.</u>

> Following the hearing, the trial court denied Warner's motion, holding:
>
> Here, there is sufficient nexus between Warner's admitted conduct in Practicing Medicine without a License and the surrounding circumstances of that offense – alleged to have been sexual in nature – to warrant inquiry into his sexual history. The presentence investigation, including a sexual history investigation, should continue.

<u>Id.</u> at *2 (quoting the trial court). <u>See also</u> Ex. 10 to *Amended Complaint*, Document # 43.

On March 9, 2007, the sentencing hearing was held. The trial court imposed a suspended sentence of incarceration not to exceed five years, a fine of $750, and three years' probation, and the State dismissed the sexual abuse charge. Additionally, the trial court imposed special conditions of probation, one of which ordered that Warner "*shall comply with any evaluation and participate in all treatments and programs recommended by his supervising officer*." <u>Id.</u> (emphasis added); <u>see also</u> Ex. 2, *Judgment Entry*. After announcing Warner's sentence and the

conditions of probation, the following exchange took place:

> [WARNER'S COUNSEL]:  I did have a question, Your Honor.  You mention that Mr. Warner complete all evaluations that the Department of Corrections recommends.  I guess I'm not clear as to does this include [participation in the Sex Offender Treatment Program]?  I guess what's your order about that?

> - - -

> [COUNTY ATTORNEY]:  Your Honor, I talked to [Sue Boggs], and it's my understanding that [Warner] – if this works the ways it's planned, [Warner's] probation will be transferred to the State of Pennsylvania.  So the Eighth Judicial District is not asking for or planning on doing any kind of an evaluation with [Warner] for this purpose of the [Sex Offender Treatment Program].

> *What I think needs to be understood is, if [Warner] does get transferred to Pennsylvania ..., he's going to have to do whatever their requirements are.  And if that's the requirement to do the [Sex Offender Treatment Program], or I'm sorry, to do any kind of an evaluation to determine if [the Sex Offender Treatment Program] is necessary, then ... [Warner's] going to have to do that or [Pennsylvania's] not going to supervise him and he's going to be shipped back to the Eighth.*  And we don't want to do that.  So in Iowa, we're not asking for that to happen, *but Pennsylvania could very well.*  And if they do, he's going to have to do what they're asking for or else he's going to have to come back to Iowa for his probation....

> [WARNER'S COUNSEL]:  Your Honor, we have no problem with an evaluation to be done as long as the Court isn't sentencing him to [the Sex Offender Treatment Program].

> THE COURT:  I don't think there is a problem.

> [WARNER'S COUNSEL]:  Okay.

Id. (quoting from sentencing hearing) (emphasis added, bracketed text in Iowa Court of Appeal's decision).

The trial court then issued its *Judgment Entry* Order and stated:

The court notes the further suggested special probation conditions listed on page 24 of 25 of the Presentence Investigation Report filed January 31, 2007, that includes a requirement that 1) defendant Warner have no further dealings with any member of the Amish community without permission; and 2) that he complete all requirements for an evaluation to determine his appropriateness for placement in a Sex Offender Treatment Program.

> At this time, the court declines to impose the foregoing two special conditions of probation for the reasons set forth in the record made at sentencing.

Ex. 2, *Judgment Entry*, ¶ 3.

On March 9, 2007, Warner signed and executed a document entitled *Eighth Judicial District Department of Corrections Services Probation Agreement*.  Ex. 3.  He agreed, *inter alia*,

to "participate and cooperate fully with any treatment plan and in any professional counseling program as directed." Id., ¶ 6.

### 2. Warner Requests That His Parole Supervision Be Transferred To the Board So That He Can Live In Pennsylvania

Immediately after he was sentenced, Warner sought to have his probation supervision transferred from Iowa to Pennsylvania pursuant to the Interstate Compact for the Supervision of Adult Offenders Act (the "Interstate Compact"). The Interstate Compact provides offenders the opportunity to transfer their probation or parole supervision to the community where they have family, confirmed employment, specialized treatment programs, and/or educational or vocational opportunities. See Iowa Code § 907B.2; 61 PA.CONS.STAT. § 7111 et seq.[2]

As participants of the Interstate Compact, both Iowa and Pennsylvania have agreed that "[a]ll lawful actions of the interstate commission, including all rules and bylaws promulgated by the interstate commission, are binding upon the compacting states." Iowa Code § 907B.2, Article XIII(2)(a); 61 PA.CONS.STAT. § 7112, Article XIV(B)). Importantly, Rule 4.101 of the Interstate Compact provides: "A receiving state shall supervise an offender transferred under the interstate compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state." *Interstate Compact For Adult Offender Supervision Rules* (Mar. 2010) at 37.[3] Additionally, Rule 4.103(a) provides:

> At the time of acceptance or during the term of supervision, the compact administrator or supervising authority in the receiving state may impose a special condition on an offender transferred under the interstate compact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state.

---

[2]

The various statutes that set forth the Board's jurisdiction, powers and authority recently have been codified by Act No. 2009-33 (P.L. 147, No. 33, § 7, effective October 13, 2009). The main effect of this new legislation was to codify the Pennsylvania statutes dealing with prisons, probation, and parole into a consolidated title, designated under Title 61 of the Pennsylvania Consolidated Statutes. Prior to the recent consolidation and codification of the Parole Act, the Interstate Compact was found at 61 PA.STAT. § 324 et seq.

[3]

The *Interstate Compact for Adult Offender Supervision Rules* (Mar. 2010) is available online at http://www.interstatecompact.org.

Id. at 39.

In Pennsylvania, the Board is responsible for providing probation supervision services and one of its many functions is to supervise offenders sentenced by other states where, as was the case here, a request is accepted pursuant to the Interstate Compact. Within this responsibility, the Board has the authority to designate conditions of probation for an offender under its supervision. See 61 PA.STAT. § 331.33 (2007) (repealed and replaced by 61 PA.CONS.STAT. § 7122); see also 61 PA.STAT. §§ 331.17-17a (2007) (repealed and replaced by 61 PA.CONS.STAT. § 6133(a)); 37 PA.CODE § 67.1 et seq.; see also Ex. 51, *Defendant Williams Decl.*, ¶ 5; Rules 4.101, 4.103 of the *Interstate Compact For Adult Offender Supervision Rules.*

On March 9, 2007, Warner signed and executed an *Offender's Application For Interstate Compact Transfer.* Ex. 4. He acknowledged that:

> *I understand that my supervision in another state may be different than the supervision I would be subject to in this state [Iowa]. I agree to accept any differences that may exist* because I believe that transferring my supervision to PENNSYLVANIA (receiving state) will improve any chances for making a good adjustment to the community[.]

Id. (emphasis added). He also endorsed the following statements:

> I will comply with the terms and conditions of my supervision that have been placed on me, or that will be placed on by IOWA (sending state) *and Pennsylvania* (receiving state).
>
> I understand that if I do not comply with all the terms and conditions that the sending state or the receiving state, or both, placed on me, that it will be considered a violation and I may be returned to the sending state.

Id., ¶¶ 2-3 (emphasis added). The *Transfer Request* executed by Iowa, as the sending state, identified the special conditions attached to Warner's supervision, including "1) [Warner] shall comply with any evaluations and participate in all treatment and programs recommended by his supervising officer." Ex. 6 at 1.

### 3. The Board Imposes As a Condition Of Probation That Warner Submit To a Sexual Offender Assessment

Warner's probation supervision was assigned to the Board's District Office in Erie, Pennsylvania. It received information from Iowa explaining both of the criminal counts that had

been filed against him and the result of his plea agreement. Iowa also informed the Board that "*according to the PSI in this matter this offense was sexually motivated*. Another victim in the Amish Community in Missouri reported similar problems in 2004." Ex. 5, *Request For Reporting Instructions*, at 1-2.

After receiving this documentation, the Board, through Defendant Lightner, determined that Warner should be evaluated to determine if its sex offender designation should apply such that he would be supervised as a sex offender. See Ex. 9, *Supervision Plan/Report*; Ex. 52 *Defendant Lightner Dep.* at 16, 21-22. The Board imposed the condition pursuant to its policy, which provides that "[t]he Parole Supervision staff and sex offender treatment providers may also screen offenders *who have not been convicted of sex offenses but have exhibited suspicious behavior that warrants evaluation to determine if the sex offender procedure should apply*." Ex. 12, *March 27, 2007, Letter from Defendant Lightner to Warner's counsel* (quoting Board policy) (emphasis added); see also Ex. 52, *Defendant Lightner Dep.* at 40-41 ("the way our policy read is, if somebody has a conviction for a sex offense, we should refer that person for evaluation, or if they demonstrate suspicious behavior, that we can refer them for a sex offender evaluation."). This policy applies without regard to whether the offender is under supervision because of a Pennsylvania conviction or is under supervision pursuant to a request under the Interstate Compact. Id. Diane Dombach, the Clinical Director of Pennsylvania's Sexual Offenders Assessment Board ("SOAB"), explained the reasoning for such a policy during her deposition testimony:

> [I]n the field of sex offender evaluation, treatment, assessment, that sort of broad field, one doesn't focus solely on charges and convictions.
>
> When a charge -- *a charge may easily be dismissed as part of a plea bargain, but in assessing and treating that person going forward, you look at all of the underlying behavior in consideration of your assessment.*
>
>     - - -
>
> *So the issue of any charges being dismissed [is] not necessarily relevant to whether that person should be in sex offender treatment or regarded as a sex offender for the purpose of treatment.*

Ex. 53, *Dombach Dep.* at 15 (emphasis added). See also id. at 21 (explaining that a jury acquittal

and the dismissal of charges pursuant to a plea agreement are viewed differently "[b]ecause there are a variety of reasons for a DA dismissing charges that have nothing to do with an actual occurrence of a sex offense. They discharge all of the time in consideration of a plea agreement, to get a plea.... It does not in the field discount that that behavior took place.").

When Warner reported to the Board's Erie District Office he was informed, in accordance with its policy, that one of the conditions of his probation was that he contact CART within seven days and schedule an evaluation for appropriateness for sex offender therapy. See Ex. 7, *Parole Violation Warning/Instruction*. The Board also provided a written referral to CART requesting that the evaluation answer the following questions:

> 1.    Was the offender's guilty plea to "practicing Medicine without a License" a crime that was motivated by sexual desires?
>
> 2.    Should this offender attend therapy sessions?

Ex. 10 at 2. It also advised CART that:

> The Iowa Sheriffs Department alleges that a 21 [year-old] Missouri woman reported that in February 2004 Dick Warner offered to perform a female exam on her. She declined. She alleges he touched her breast and advised her to masturbate to alleviate lumps in her breast.
>
> - - -
>
> Iowa courts sentenced the offender to probation – but declined to impose sex offender conditions.
>
> The [Board's Erie District Office], under authority of the Interstate Compact, has requested that an evaluation be done to our standards.

Id. at 4 (numbered paragraphs omitted).


### 4.    Warner Challenges the Board's Condition

Warner initially refused to comply with the Board's condition that he submit to a sex offender evaluation. On or around April 12, 2007, he filed a *Motion For Reconsideration Of Sentence* with the trial court in Iowa in which he sought "relief from certain of the requirements of the Pennsylvania probationary requirements," including, *inter alia*, the requirement that he undergo sexual offender treatment/programming." Ex. 18, *Ruling On Motion For Reconsideration*. The trial court scheduled a hearing for May 25, 2007, and issued an Order

9

directing that Warner "not ... be evaluated for sexual offender therapy or treatment" until the motion could be resolved. Ex. 15. Consequently, the Board allowed Warner to "defer attendance of [his CART evaluation] until after his 5/25/07 Hearing in Iowa." Ex. 19, *Supervision Plan/Report*.

Thereafter, by letter dated March 26, 2007, Warner submitted to Defendant Lightner a formal written complaint. Ex. 11. She denied his complaint, responding:

> The Interstate Compact agreement authorizes us to impose conditions that are necessary to safely and effectively supervise you. You agreed to that when you applied for the transfer to the state of Pennsylvania. The condition was imposed to determine if the Sex Offender Protocol should be applied in your case. It is absolutely imperative that you comply. Failure to do so will be deemed a violation of your probation and will be reported to the sending state.

Ex. 12.[4]

Plaintiff, through a letter dated April 9, 2007, appealed Defendant Lightner's decision to Defendant Williams, "requesting relief in the form of the lifting of the special condition of probation, that probationer must participate in assessment/evaluation of sex offender therapy and conditions, and the implied condition that probationer thereafter comply with any therapy resultant of such assessment/evaluation." *April 9, 2007, Letter* attached as Ex. JW to Ex. 51, *Defendant Williams Decl.* Defendant Williams did not respond to Warner's appeal.[5] Ex. 51, *Defendant Williams Decl.,* ¶¶ 8-10.

Back in Iowa, the trial court issued a decision denying Warner's motion on June 5, 2007. Ex. 18. It held:

> ... [T]he court finds the Judgment Entry filed March 9, 2007 should not be reconsidered, amended or changed as concerns the probationary supervision. Among other things:
> - - -
> c) although this court has declined to impose special terms and conditions of probation in the sentencing order, *the State of Pennsylvania is within its rights,*

---

[4]

Following receipt of the response from Defendant Lightner, Warner filed a *Petition For a Temporary Injunction* in the Court of Common Pleas of Crawford County, Pennsylvania. That court denied the motion on April 9, 2007. Ex. 14.

[5]

Williams maintains that he "had not seen or been made aware" of Warner's letter until this litigation. He states that if he had responded to Warner's appeal, he would have denied it because Defendant Lightner's decision "was consistent with my understanding of the Board's power and authority." Ex. 51, *Defendant Williams Decl.,* ¶¶ 8-10.

*under the provisions of the interstate compact, to supervise Warner pursuant to its own rules, laws and regulations.* An Iowa court cannot require otherwise;

d) the court's Judgment Entry is intended to and will promote Warner's rehabilitation and the protection of the community. *The terms of probation imposed by the court are not unreasonable or arbitrary.*

Id., ¶ 20 (emphasis added).

Warner appealed the trial court's decision to the Iowa Court of Appeals, an intermediate appellate court. On November 2, 2008, that court issued a decision denying his appeal. State v. Warner, 760 N.W.2d 209 (Table), 2008 WL 5009279 (Iowa App. 2008). In pertinent part, it rejected his claim that "the sentencing court should have ordered the Pennsylvania Department of Corrections not to require him to complete a sexual evaluation because the crime was not sexual in nature." Id. at *1. It explained:

Warner ... contends the [trial] court should have ordered the Pennsylvania Department of Corrections not to require him to complete a sexual evaluation because his crime was not sexual in nature. *The State responds that Warner is not entitled to relief because the Pennsylvania authorities are free to supervise [him] as they see fit. We agree.*

- - - -

In this case, Warner does not dispute that he requested his probation be transferred to Pennsylvania. In accepting Warner's supervision, it is clear under the [Interstate] Compact rules that it is Pennsylvania, not Iowa, that determines the manner in which Warner is to be supervised. *Furthermore, Pennsylvania, in accepting Warner's probation supervision, was free to impose special conditions upon Warner. Moreover, at Warner's sentencing hearing, the county attorney expressly advised Warner that if Warner requested his probation supervision be transferred to Pennsylvania, he would be subject to Pennsylvania's supervision conditions. Consequently, we conclude the district court did not err determining that Pennsylvania is within its rights, under the provision of the [Interstate] Compact, to supervise Warner pursuant to its own rules, laws, and regulations, and that an Iowa court cannot require otherwise.* We therefore affirm the judgment and sentence of the district court.

Id. at *5 (emphasis added).

### 5. CART Evaluation and Treatment

In the meantime, following the trial court's denial of his *Motion For Reconsideration Of Sentence,* Warner was directed by the Board to schedule his sex offender evaluation with CART. Ex. 19, *Parole Violation Warning/Instruction.* He eventually submitted to the sex offender

evaluation on June 28, 2007, and dates thereafter. See Ex. 20, *Progress Report*. CART issued a written report on November 29, 2007. Ex. 22, *CART Evaluation Summary*. It concluded that Warner's "resistant approach to the assessment has made it impossible … to adequately address the referral questions pertaining to [his] possible sexual motivations and his treatment needs relative to sexual deviancy." Id. at 10-11.

After receiving the CART report, Defendant Lightner, after consulting with Diane Dombach from the SOAB, determined that Warner would be designated as a sex offender for purposes of his supervision. Consequently, sex offender treatment was included as a component of his supervision and a condition of his probation. Ex. 52, *Defendant Lightner Dep.* at 26-31; Ex. 53, *Dombach Dep.* at 23-29. Importantly, this designation did not trigger any registration or community notification provisions of Pennsylvania's Megan's Law, 42 PA.CONS.STAT. § 9791 et seq., nor did it have the effect of categorizing Plaintiff as a sexually violent predator under Pennsylvania law, 42 PA.CONS.STAT. § 9795.4. See *Defendant's Statement Of Material Facts Not In Dispute*, Document # 48, ¶¶ 26, 40.

On or around January 3, 2008, Warner was directed to attend treatment sessions at CART as a condition of his supervision. Ex. 24, *Parole Violation Warning/Instruction*. Although he did attend the treatment sessions, he was discharged from the program on April 18, 2008, because of lack of cooperation. See, e.g., Ex. 26.

### 6.     Warner Is Discharged From His Probation Sentence

In July 2008, the Board issued an *Offender Violation Report*, Ex. 27, and in October 2008, Warner filed with the Iowa trial court another motion for reconsideration of his sentence. The trial court subsequently presided over a hearing and afterward it discharged Warner's sentence. See *Amended Complaint*, Document # 43, at ¶¶ 44-45. Thus, he is no longer subject to a probation sentence and the Board is no longer supervising him. Id.; Ex. 34, *Case Closure Notice*; Ex. 35, Oct. 30, 2008, *Supervision Plan/Report*.

**C.     Standard Of Review**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-49.

### D. Discussion

#### 1. The Board and the Named Defendants In Their Official Capacities Are Entitled To Summary Judgment Because They Have Eleventh Amendment Immunity

##### (a) The Board

The Board moves for summary judgment under the Eleventh Amendment, which bars suits in federal courts against the state irrespective of the type of relief requested. See Lavia v. Pennsylvania Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) ("the type of relief sought is irrelevant to the question of Eleventh Amendment immunity.").[6] Here, the Board is the equivalent of the Commonwealth for Eleventh Amendment purposes. See, e.g., Wood v. Pennsylvania Board of Prob. and Parole, Docket No. 3:08-cv-76, 2009 WL 1913301, at *3 (W.D. Pa. July 2, 2009) (The Board is an arm of the Commonwealth and is entitled to immunity under the Eleventh Amendment). Warner does not specifically oppose the granting of summary judgment in favor of the Board. See *Brief In Opposition To Defendant's Motion For Summary Judgment*, Document # 58.

---

[6] There are two exceptions to the Eleventh Amendment bar to suit against the states in federal court. Lavia, 224 F.3d at 195. One exception is for Congress to validly abrogate the immunity, and the second exception is for states to waive the immunity. Id. Congress has not abrogated the States' immunity under 42 U.S.C. § 1983. Boykin v. Bloomsburg Univ. of Pennsylvania, 893 F.Supp. 378, 394 (M.D.Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), aff'd, 91 F.3d 122 (3d Cir. 1996). And, Pennsylvania has not waived its Eleventh Amendment immunity. 42 PA.CONS.STAT. § 8521(b).

Based on all of the foregoing, the Defendants' motion for summary judgment in the Board's favor for the claim against it should be granted.

<b>(b)     Defendants McVey, Lightner, and Williams Are Entitled To Summary Judgment To the Extent They Are Sued In Their Official Capacities</b>

Defendants McVey, Lightner, and Williams move for summary judgment to the extent that Warner has sued them in their official capacities as representatives or agents of the Board. They note that this action now is one for damages only and that the Eleventh Amendment proscribes damage actions in the federal courts against state agents acting within their official capacities. See <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974) (state employees acting in their official capacity). Importantly, Warner does not specifically oppose the motion for summary judgment of these Defendants on this basis. See *Brief In Opposition To Defendant's Motion For Summary Judgment*, Document # 58.

Based on all of the foregoing, the Defendants' motion for summary judgment in favor of McVey, Lightener, and Williams to the extent that they are being sued in their official capacities should be granted.

<b>2.     Defendant McVey Also Is Entitled To Summary Judgment Because She Had No Personal Involvement In Warner's Probation Supervision</b>

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, he or she has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>Id.</u> quoting <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1120 (3d Cir. 1990). The supervisor must be personally involved in the alleged misconduct. <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (citations omitted) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated

solely on *respondeat superior*.  <u>Id.</u> quoting <u>Rode</u>, 845 F.2d at 1207; <u>Davis v. Pennsylvania Board of Prob. and Parole</u>, Docket No. 05-cv-330, 2006 WL 3308440 (W.D. Pa. Oct. 13, 2006) (dismissing McVey from a civil rights case because she cannot be held liable solely on the operation of *respondeat superior*).

Defendants move for summary judgment in favor of Defendant McVey because Warner cannot direct the Court to any evidence in the record establishing a material issue of fact as to whether she had the requisite personal involvement.  Warner has not responded to their argument.  <u>See</u> *Brief In Opposition To Defendant's Motion For Summary Judgment*, Document # 58.

The summary judgment record shows that Warner has never met McVey or had any communication with her during the relevant time period.  <u>See</u> Ex. 56, *Warner Dep.* at 78.  The sole basis of his claim against her is that "[s]he's a supervisor, a Director of State Probation.  In my view, she's totally responsible for all of the subordinates that she oversees."  <u>Id.</u> at 82.  In sum, the record supports only one conclusion – that Warner named McVey as a defendant because of her position, rather than as a result of any specific act or omission on her part.

Therefore, based on all of the foregoing, the Defendants' motion for summary judgment in favor of McVey should be granted because she had no personal involvement in the complained-of misconduct.


      **3.**      **Summary Judgment Should Be Granted For the Remaining Defendants, Lightner and Williams, Because They Are Entitled To Qualified Immunity**

Warner has moved for summary judgment on his procedural due process claim because he "was not afforded a hearing to determine the appropriateness of his probation sentence." *Plaintiff's Motion For Summary Judgment*, Document # 52 at 2.  Defendants contend, *inter alia*, that the Court should grant summary judgment in favor of Lightner and Williams because they are entitled to qualified immunity.

The privilege of qualified immunity recognizes the balance between the need for a forum to vindicate the abuse of federal rights and the "substantial societal costs" entailed in opening government officials to suit for the discretionary exercise of their public duties. Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). The Supreme Court resolved these competing concerns "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002). It therefore affords "protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit Court of Appeals summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the [official's] conduct violated a constitutional right? Saucier, 121 S.Ct. at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an [official's] conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, supra; Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).

The rigid two-step inquiry set forth in Saucier has recently been relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. — , 129 S.Ct. 808 (2009). See also Bumgarner v. Hart, 316 F.App'x 201, 204 (3d Cir. Mar. 6, 2009). As the Pearson Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district

courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."

Pearson, 129 S.Ct. at 821.

This Court recently has summarized the current state of the Saucier framework in the post-Pearson era:

> By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate, the [Supreme] Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." ... Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

Rogers v. United States, Docket No. 08-cv-149, — F.Supp.2d — , 2010 WL 891240 at *23 (W.D. Pa. Mar. 10, 2010) quoting DeLauri v. New Jersey Div. of State Police, Docket No. 05-cv-4165, 2009 WL 222983 at *5 (D.N.J. Jan. 27, 2009), quoting Pearson, 129 S.Ct. at 818-20. See also Jarovits v. Monroe Co. Children and Youth Services, 345 F.App'x 784, 788-89 (3d Cir. 2009) (proceeding directly to the second step of the Saucier analysis); Newland v. Reehorst, 328 F.App'x 788, 790-91 (3d Cir. May 12, 2009) (same).

In the spirit of Pearson and its progeny, this Court may proceed to the second step of the Saucier analysis – whether Warner's due process rights were so "clearly established" that the complained-of conduct of Defendants Lightner and Williams would have appeared unlawful to an objectively reasonable official in the situation they confronted. See Walter v. Pike County, 544 F.3d 182, 191 (3d Cir. 2008). This inquiry considers not just whether their actions were reasonable in light of clearly established law but also the information possessed by the them, which included information from Iowa explaining both of the criminal counts that had been filed against Warner and the result of his plea agreement; that "*according to the PSI in this matter this offense was sexually motivated*. Another victim in the Amish Community in Missouri reported similar problems in 2004," Ex. 5, *Request For Reporting Instructions*, at 1-2; and, that one of the special conditions of probation imposed by the trial court was "[Warner] shall comply with any

evaluations and participate in all treatment and programs recommended by his supervising officer." Ex. 6 at 1. <u>See</u> <u>Anderson</u>, 483 U.S. at 641 (district court must consider whether "a reasonable officer could have believed [his conduct] was lawful, in light of clearly established law and the information the [officer] possessed.").

**(b)     Warner's due process rights were not "clearly established"**

Conducting a procedural due process analysis involves a two step inquiry.  The first question to be asked is whether Warner has a protected liberty interest within the contemplation of the Due Process Clause.  If he does, the second question to be asked is whether the process afforded to him comported with constitutional requirements.[7]  <u>See</u>, <u>e.g.</u>, <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000); <u>see</u> <u>also</u> <u>Burns v. Pennsylvania Dep't of Corr.</u>, 544 F.3d 279, 283-84 (3d Cir. 2008) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law.").

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' <u>see</u>, <u>e.g.</u>, <u>Vitek v. Jones</u>, 445 U.S. 480, 493-494 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, <u>see</u>, <u>e.g.</u>, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (a state government "may under

---

[7]

Warner complains because he was not given a Board hearing, but there is no requirement that a probationer receive a hearing in order to challenge an imposed condition of supervision.  Rather, the Board provides that if an offender disagrees with or objects to a special condition of probation, the offender may contest the special condition in writing, first to the District Director (here, Defendant Lightner), then to the Regional Director (here, Defendant Williams), and then to the Director of the Office of Probation and Parole Services. Ex. 51, *Williams Decl.* at ¶ 7 <u>quoting</u> Volume III, Chapter 4, Probation and Parole Conditions, Procedure 4.12 (effective 8/1/04).  In his *Brief In Opposition To Defendant's Motion For Summary Judgment*, Document # 58, Warner argues that because Williams failed to respond to his written appeal that his due process rights were violated.  However, because Warner has not shown that he had a protected liberty interest, Williams' failure to respond to his written appeal, in and of itself, cannot establish a due process violation.  <u>Clark v. Township of Falls</u>, 890 F.2d 611, 620 (3d Cir. 1989) ("The right to procedural due process does not exist in isolation.... Because no liberty interest or property right was violated in this case, no right to procedural due process attached.")

certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221-22 (2005) ("a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in <u>Sandin</u>[.]").

There is no liberty interest created directly by the Fourteenth Amendment that is implicated here.  Nor has Warner shown that Pennsylvania created a liberty interest through its laws or policies.  He claims that because he was not convicted of a sex offense, the Board could not impose upon him as a condition of his probation that he attend sex offender assessment and/or treatment.  However, state law and Board policy provided no such thing.  In fact, it appears that what occurred here was consistent with both the Interstate Compact, which has been codified in both Iowa and Pennsylvania and which gave the Board the authority to supervise Warner's probation,  and Board policy, which provides that "[t]he Parole Supervision staff and sex offender treatment providers may also screen offenders *who have not been convicted of sex offenses but have exhibited suspicious behavior that warrants evaluation to determine if the sex offender procedure should apply*."  Ex. 12 (emphasis added).

Warner has not directed this Court to any decision to support the conclusion that, under the circumstances presented, requiring him as a condition of his probation to attend a sex offender evaluation and then sex offender treatment would have appeared unlawful to an objectively reasonable official.[8]  In July 2007, around the time that the events in this case occurred, the district court in <u>Renchenski v. Williams</u>, Docket No. 3:06-cv-278, 2007 WL

---

[8]

Defendants note that their research led them to cases that discussed the application of sex offender treatment requirements to *incarcerated* individuals, and the effect that a refusal to participate in sex offender treatment while incarcerated had on decisions regarding whether to grant parole – a circumstances that is distinguishable from that presented by the case at hand.  They further note that this is not a case where the designation of the offender for purposes of supervision triggered any registration or community notification provisions of Pennsylvania's Megan's Law, nor did it have the effect of categorizing Plaintiff as a "sexually violent predator" under Pennsylvania law.

2155542 at *9 (M.D. Pa. July 26, 2007) considered whether a prisoner who had not been convicted of a sex crime "had a liberty interest in not being labeled a sex offender and/or not being required to participate is sex offender programming[.]"[9]  It observed that those issues have "not been decided by the Supreme Court or the Third Circuit Court of Appeals."  Id.  The Renchenski Court then surveyed the various courts of appeals that have decided this or similar issues and found that "Circuits which have considered the issue have reached different results." Id.  It concluded from its survey of caselaw from other jurisdictions that "the finding of a liberty interest to which due process attached in each case *was in combination with some other tangible deprivation*."  Id. at *11 (emphasis added) comparing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (labeling inmates as sex offenders and subjecting them to mandatory treatment that was a pre-condition to parole implicated liberty interest requiring procedural protections; inmate who had never been convicted of sex offense and never had opportunity to contest classification as sex offender in adversarial setting did not receive minimum due process protections to which he was entitled); Chambers v. Colorado Dept. of Corr., 205 F.3d 1237, 1242 (10th Cir. 2000) (inmate was entitled to procedural due process before being classified as sexual offender by state department of corrections when inmate was not convicted of sex offense, classification was based on victim's statement contained in police report, and classification reduced amount of earned time credit; because "sex offender" label was "based on bare allegations which are vigorously denied and which have never been tested ... procedural scrutiny" was required); Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999) (inmate who had not been convicted of sex offense, but had sex-related charges listed in his presentence report, had liberty interest in not being labeled as sex offender and was entitled to due process before being classified as such when, as result of sex-offender status, inmate was required to attend group therapy sessions as prerequisite for parole eligibility and was ineligible for minimum custody classification which allowed participation in work-release and community-custody programs); and Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2005) (plaintiff who had pled guilty and was convicted of

---

9

In Renchenski, the plaintiff had been convicted of murder and the official version of the crime indicated that there was a sexual component to it.  2007 WL 2155542 at *1.

misdemeanor assault but who was required to register as a sex offender and attend sex offender therapy after being released on mandatory supervision was entitled to procedural due process protections because "[a]lthough many parolees are required to participate in some form of counseling or treatment as a condition on their release, we find that, due to its highly invasive nature, Texas's sex offender therapy program is 'qualitatively different' from other conditions which may attend an inmate's release.") *with* <u>Grennier v. Frank</u>, 453 F.3d 442 (7th Cir. 2006) (a plaintiff who had not been convicted of a sex offense and who was required to attend sex offender therapy in order to receive parole did not have a liberty interest); <u>Gunderson v. Hvass</u>, 339 F.3d 639 (8th Cir. 2003) (plaintiff who had been convicted of a non-sexual assault did not have a liberty interest in not being labeled a predatory offender; plaintiff's claimed loss of reputation was not enough to show a liberty interest).

Defendants also stress that in those cases where a liberty interest has been found, there were more substantial impacts or restraints on the offender's liberty than are present here. As observed by the district court in <u>Hansen v. Doe</u>, Docket No. 4:06-cv-3211, 2008 WL 183269 (D.Neb. Jan. 16, 2008), <u>aff'd</u> 342 F.App'x 229 (8th Cir. 2009):

> in [cases in which the courts have characterized the stigmatizing consequences of being labeled a "sex offender" as a deprivation of liberty requiring procedural protections], a liberty interest worthy of due process protection was found not simply because the inmate had been classified as a sex offender, *but because the classification caused serious, concrete consequences affecting the inmate's time in, or nature of, confinement-i.e., reduction of good-time credits, mandatory participation in therapy that was a prerequisite for parole eligibility, removal of eligibility for work-release and community custody programs, and placement on a public sex offender website.*

<u>Id.</u> at *3 (emphasis added). Thus, Defendants argue, those cases can be distinguished from the present facts and circumstances. The summary judgment record, they contend, simply does contain evidence from which it could be found that Warner was subjected to "serious, concrete consequences" or other "tangible deprivation" in being designated a sex offender by the Board for internal purposes of supervision.

Warner has failed to counter Defendants' arguments. He asserts that he was deprived of a liberty interest because his reputation was harmed by being subject to the challenged probation conditions. In order to state a due process claim for deprivation of a liberty interest in reputation

a plaintiff must show: (1) a stigma to his reputation; and, (2) deprivation of some additional right or interest. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). See also Paul v. Davis, 424 U.S. 693, 694 (1976) (defamation, "standing alone and apart from any other governmental action," is insufficient to state a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment). The "stigma" factor is met where the alleged stigmatizing statements were made publicly and were false. Id. The record in this case is devoid of evidence that any Defendant made any public statement or disclosure regarding Warner's supervision as a sex offender. Nor has Warner pointed to evidence to support that second factor – that he was deprived of "some additional right or interest." His allegations of economic harm are simply too speculative on the instant record, see Clark, 890 F.2d at 620, and his claim that "being forced to go through the process was humiliating, disturbing, embarrassing, and detrimental to his reputation" is insufficient as a matter of law. See Good v. City of Sunbury, 352 F.App'x 688, 691 (3d Cir. 2009) ("in Baraka [v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007)] we at least strongly suggested that the emotional distress suffered attendant to reputational harm does not constitute a valid 'plus' factor for purposes of the 'stigma plus' requirement'). See also Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1078 (3d Cir. 1997) (plaintiff, who alleged harm in the form of, *inter alia*, "emotional injury" "has not suffered a deprivation beyond the injury to his reputation [and therefore] has not pleaded a valid claim based on a violation of his liberty interests.").

The foregoing discussion demonstrates that the Defendants have, at the very least, established that as a matter of law Warner has not shown that his constitutional rights were so "clearly established" that Defendant Lightner's and Defendant Williams' complained-of conduct would have appeared unlawful to an objectively reasonable official in the situation they confronted. Therefore, they are entitled to qualified immunity.

Warner has presented no valid argument in response to Defendants' qualified immunity defense. His only retort is that the Court should defer from conducting a qualified immunity analysis at this point in time because the relevant facts allegedly "have not been fully developed." *Brief In Opposition To Defendant's Motion For Summary Judgment*, Document # 58 at 2-3.

There is no merit to this argument. Discovery has been completed and the issue of qualified immunity can and must be resolved at this stage in the litigation. When it attaches, the privilege "is an immunity from suit rather than a mere defense to liability" which is lost if defendants go to trial. Saucier, 533 U.S. at 200-01; Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (qualified immunity is not a defense to liability, but "an entitlement not to stand trial or face the other burdens of litigation"). Once qualified immunity is asserted by a defendant, the plaintiff has the burden of demonstrating the privilege should not attach. McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001). Warner has not met his burden. Therefore, Defendants' motion for summary judgment should be granted on the basis of qualified immunity and Warner's motion for summary judgment should be denied.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the State Defendants' motion for summary judgment [Document # 47] be granted and that Plaintiff's motion for summary judgment [Document # 51] be denied. It is further recommended that Plaintiff's motion for judgment on the original pleadings [Document # 55] be dismissed. The Clerk of Courts should be directed to close this case.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of serve to file written objection to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  July 9, 2010

cc:      The Honorable Sean J. McLaughlin
         United States District Judge

24